Good morning. My name is Eric Biafid for the Petitioner. Glad to have you, Counselor. Thank you. Your Honor, the first issue I'd like to talk about is whether or not the Petitioner last entered the United States unlawfully. The record in this case actually shows that he did not last enter the United States unlawfully. He actually used a border-crossing card numbered 406-8868 and entered in November of 1984. And that... There are some facts that suggest he entered in August 25th of 84, right? Right. That was stated by me based on my knowledge and understanding of the case at that time. Since that time, that was originally with the habeas corpus petition. Right. But since that time, the government submitted at Docket Entry 21, Exhibit B, which is page 11, that is actually the application for adjustment of status. And if you notice, there's checkmarks throughout that application. That means the officer went through and asked the question and checked off the answer. That application was, in fact, denied when the spouse withdrew. That's correct. The I-130, correct? Right. It was denied because... Apparently so, yes. Yeah. Then the act, the new Immigration Reform Act, happened on April 1st of 1997. Correct. That was the effective date. And then there was a deportation order reinstated on December 1st, 2009. Correct. All right? So... We understand your argument. My position is that the respondent or the petitioner did not actually last enter unlawfully. He actually entered legally. So that reinstatement order was not appropriate based on the adjustment application in the government's motion to submit or to supplement the record. But that really, I'm trying to figure out how that has relevance to what we have here, because the government reinstated the order. And as I understand it, you are really appealing whether the order is impermissibly retroactive. That as well. But upon review, we're arguing that it should never have been reinstated in the first place. I thought we didn't have jurisdiction to consider that question. Am I wrong or not? You have jurisdiction to determine if the government met all the requirements for reinstatement, which includes whether the record shows that the respondent entered illegally. I guess I thought you ‑‑ I was under the impression you couldn't attack the validity of the underlying reinstatement order. You could raise whatever legal challenges, like it's impermissibly retroactive, but that we didn't have jurisdiction to go behind the reinstatement order and figure out whether it was properly imposed. Am I wrong on that? The court doesn't have jurisdiction to review a challenge to the original deportation order. But as far as the reinstatement order goes, the court has jurisdiction to determine if the officers who reinstated the prior order met all the elements or if there was evidence in the record establishing that the respondent was ordered, removed, or deported, that the respondent is the person in the record, and that he last entered the United States unlawfully. And did you give the underlying authority the chance to think about that? I don't understand your question. Well, you're here on appeal, right? Yes. Did you give that court from which you appealed the opportunity to think about this question? No, because I did not have the record at that time, so it wasn't raised, and then it was transferred to this court. Well, I guess, again, Judge Watford's question was pretty good. If you didn't even ask the underlying court to talk about this, how are we going to get a chance to do it? Well, the underlying court transferred it to this court. Transferred it to us after they'd already made a decision, right? No, they decided that they didn't have jurisdiction, so they transferred it to this court. Well, that was a decision, wasn't it? Yes. They didn't have jurisdiction, so now it comes to us as to whether they do. And they didn't appropriately speak about the issue you now want us to talk about, because you didn't bring it in front of them. Correct. And you're suggesting, I guess, based on your answers to my good colleagues, I thought pretty good questions, that all of a sudden this court has jurisdiction over an issue you didn't even merit to give to the underlying court who denied the application for lack of jurisdiction. Yes, that sounds correct. What case do you rely on suggests that my colleagues and I have jurisdiction then over this case, since the issue you present now is not even an issue that court addressed, and their total issue was jurisdiction? What case do you rely on that I should take up this new idea or new argument? Well, this argument is all part of... I understand what this argument is part of. Do you have some good precedent which would suggest that I or my colleagues and I can take this up now? Do you have a case where this has ever happened before? No, I do not. Or do you have a case where this was tried to have happened, and the court said, no, we don't have any right to address it? I'm not aware of any cases like that. You do know quite a few cases about waiver, right? Yes, waiver in what sense? Waiver of the right to bring up something on appeal which you don't present to the underlying justiciable court. Yes, I'm aware of that. Why have you not waived that issue? I don't have an answer for that. Well, can I ask you just to skip past this and go just to the merits of the issue that I thought you had come here to talk to us about? Yes. What is it that you contend your client was deprived of in terms of the impermissibly retroactive effect of ARERA? Well, at the time he applied for adjustment of status, he had the right to renew it in immigration court. He's not applying again in immigration court. He's just renewing the application. So when the reinstatement statute was changed, that took away his right to see an immigration judge about his application to renew it. So it's just the ability? I mean, he had the initial application denied, and it's just the ability to get some form of judicial review? Is that what he's been deprived of? Yes, he has no right to appeal that decision. So his right, in a sense, to appeal it comes in the form of renewing it in immigration court. And so he has to wait for the government to take some action to remove him before he can re-raise the adjustment of status? That's right. Okay. So why, I mean, I guess looking at your client's situation,  it's just based on the same factual predicate as what he raised before, or is he able to bring in some new basis? He'll be able to bring in a new basis. The adjustment of status application allows you to adjust your status to permanent resident based on whatever petition you might have through employment or through family relationship, that sort of thing. It's a continuing application. So if he goes to immigration court, which is the case now, his son turned 21, filed an I-130 petition for him, so he may renew his adjustment application based on that I-130 if it's approved. You're talking about the son's I-130? Correct. You know that the government's going to probably talk to us about the 10-year delay. Do you know what I'm talking about when I tell you that? The 10-year delay? Yes. No. How long did, from the time he should have acted until the time he acted, how much time had passed? Well, he was ordered removed or deported in 1984, and then he applied for adjustment of status. That was denied, so he's been here for 22 years since that denial. Is it significant that he could have made the arguments that you are now trying to make, at least 10 years before he made them? He could not make those arguments. He had no right to appeal his I-485 or adjustment application and no way to get in before an immigration court. We got you into the red light. We're going to. I'm anticipating what the government's going to say. We'll hear what they're going to say. Thank you. Thank you very much. Good morning, Your Honors. May it please the Court, Emanuel Palau for the respondent of this case, the Attorney General. At the outset, I would like to take issue with counsel. The adjustment application at issue was filed in 1985. It was denied on its merits in 1987 when his bigamist spouse withdrew her immigration petition. That rendered the adjustment application invalid, and he cannot proceed without the visa from his wife. So that application is dead and buried, and that happened 10 years prior to Herrera. So the point being that Mr. Ortega received a full adjudication of his adjustment application back in 1987. The relevant case here for retroactivity analysis is the Ixcot case from this court. In that case, the alien had a pending asylum application after he reentered illegally, and reinstatement terminated that pending application. And this Court said that the salient factor in the retroactivity analysis is whether the alien had a pending, unadjudicated application at the time reinstatement cut it off. Here, reinstatement ---- Why wouldn't we view it as still not fully adjudicated because there was no, you know, he hadn't run through the course of judicial review, certainly. Well, it was fully adjudicated, Your Honor. He got a decision from the INS. And in our brief, we cite cases to the effect that the lack of a procedural consequence of not getting a second bite at the apple or review of a prior adjudication is not significant. It's not really a second bite at the apple. It's a first bite. I mean, you're entitled to have some court look at whether the agency improperly denied the relief. You saw that, right? I think it's ---- I'm not going to take issue with that. I think it's more accurate to say that if the government acted to reinstate his provision pre-Arrera, he would have then been able to renew his adjustment application before an immigration judge. It just seems odd that it's the government's ---- I don't know what the explanation is for waiting 20-something years to take action against him, but it's the government's failure to do what probably it should have done in a timely manner that has put the guy in the position he's in, right? Well, it's not the government's failure, Your Honor. The government goes about its business. Mr. Ortega goes back and forth across the border. There's a massive case. We know how it works. There's no fault here by the government. Mr. Ortega had no right to have removal proceedings initiated against him at any given point in time. It's when the government is able to do it and goes forward. I would make the significant point here that he's lost nothing here. Had the government reinstated his removal order pre-Arrera, he would have gotten his hearing before an immigration judge. The immigration judge would have looked at his adjustment application and denied it on its face because it lacked an immediately available immigrant visa because his bigamous wife withdrew it. So before Arrera, he had nothing. Post-Arrera, he has nothing. Arrera did not ---- is not what terminated his adjustment application. It was terminated on the merits. So even had the government acted more promptly, the circumstances would still be the same. He would still be holding an invalid adjustment application because it lacks a visa from a U.S. citizen or a legal permanent resident. So ---- Is counsel right about the factual point that his client did not illegally reenter that last ---- I don't agree with that, Your Honor. That's ---- I mean, as we know, the record here is not what it typically is in an immigration case because it's a reinstatement. I don't think that's of any consequence for the retroactivity analysis. What's a consequence? Well, I thought, though, that you ---- the government would not be able to use the reinstatement procedure against him unless that last entry was illegal, right? Generally, that's correct. I would say that that argument was first raised four minutes ago on the stand. I would argue that the petitioner has ---- That's why I'm asking. Just as a factual matter, tell us why that's wrong. Why ---- I'm sorry. He says that that last entry, which I have, is August 25th, 1984. Yeah. I'm sorry. I'm sorry. Go ahead. I believe if he ---- once you're removed, you have to stay out of the U.S. for a certain period of time. I believe it's a very dubber time. It's probably 10 years in his case. And before you come back, you have to apply to the attorney general for permission to be readmitted. So I don't know how he got a border crossing card because I believe it was within a 10-year window. So I don't ---- again, these are new facts to me, but the typical way for an alien who's been removed to regain admission to the U.S. is to apply from his native country to the attorney general for permission to reenter. There's no record indication that happened here. So I would argue that this hasn't fixed anything on his behalf. So I would ---- if I understand him correctly, what Mr. Ortega wants to do now is take the same invalid adjustment application that was not on the merits back in 87 and present it to an immigration court today. And I would also take issue that it's not a continuing application. The adjustment application is expressly premised on a visa from his bigamous wife. Well, can he now rely on the son? Yes, he can. He can file a brand-new application based on his son's I-130 if that's even the case. And the fact that the government has proceeded via reinstatement of the prior removal order, that doesn't cut off the ---- Yes, it does. That's not retroactive. That's permissible. I understand. No, I thought you were saying that he could still ---- he still had that avenue for ---- Well, I'm talking theoretically. He's free to file whatever he likes. It's not going to get him past the front door, unfortunately, because of a rerun. But there's no retroactivity issue in that situation. So he would have to, if his son has in fact filed an I-130 on his behalf and it's current, he could then file a brand-new adjustment application. But that would be ---- he would be precluded from doing that because of a RERA reinstatement, because of his past immigration history. Does the government argue that the right to apply for adjustment of status is a vested right? I'm not sure what you mean by a vested right, Your Honor. Well, I know that retroactivity is premised on two things. One is creating new consequences, and two, it's canceling vested rights. Right. So I'm saying, what does the government say? Is the right to apply for adjustment of status a vested right? I don't think there's any right to apply for adjustment of status. I believe the right, as framed in the Ixcot decision, is if you have filed an adjustment application and it's pending, you have a vested right in getting an adjudication of that application. If that right is terminated strictly by reinstatement under RERA, which was a statute which was enacted after you filed your application, then you are precluding a vested interest that the alien had. Here, we don't have that. We would argue that that interest, whatever it is, ended when his adjustment application was denied ten years prior to RERA. At that point, it was a dead letter, and here we have the extra consequence that it wasn't just a discretionary decision, it was not the basis for the denial. The fact is, from that point forward, it's deficient. He cannot proceed on it any further because his bigamist spouse withdrew her immigrant visa petition, and without that, you cannot proceed. So we – Well, the reason I ask the question, it seemed to me that Fernandez Vargas, footnote 10 on page 44, seems to suggest maybe even the adjustment of status or the application for adjustment of status would not automatically be such a vested right. So I wanted to know what the government was arguing. I guess the use of the term vested right is throwing me off, Your Honor. I apologize. I think if you're an alien and you're present in the U.S. and you meet the qualifications of the adjustment statute and you have an immediately available visa, you certainly have the right to apply for adjustment of status. But the problem here, I think, or the way it plays in here for attractivity purposes, is that if you don't take action and get an application on file prior to a change in the law, then you've taken no action. Under Fernandez Vargas, you have nothing – no vested right to protect at that point. What, in your view, would be this Court's bottom line in its decision? The bottom line here is that this is the same circumstance as Ixcot, except you have the materially distinguishable consequence here that there was no application for relief pending at the time of reinstatement, as was the case in Ixcot. If that was the case, if he had not gotten an adjudication, then we're under Ixcot. You're acting in space preserved under Ixcot where it said we do not address the situation where the application has been terminated or adjudicated on the merits prior to ARERA being enacted. So here we have an application that was denied on the merits. Ten years later, ARERA comes into play. That did not have any effect on Mr. Ortega because he was ten years denied his adjustment application. He got his full package of rights. The most he can argue, which he suggests, is that I didn't get my crack at an immigration judge looking at this, but that's not relevant for retroactivity purposes. Can I ask one last question? Sure. Is there something that he could have done in that ten-year interval to basically force the government's hand? That's a good question. I think he could have done two things. Number one, before the government got wind that he was back in the U.S., after his wife filed the immigrant status application, he could have returned to Mexico and awaited. Well, I'm sorry, he could have sought. He was still here at that point. Yes. Right. Illegally. Yes, sir. Yes, physically. But typically the way you get legal permanent resident status is to apply in your home country and under a citizen or a resident relative in the U.S. filing the I-130. So here he had a number two wife in the U.S. who filed the I-130 for him. He could have awaited. He could have processed the application from Mexico. Adjustment of status is just a convenience for aliens who are here illegally but meet the qualifications. It's a limited window that they could have acted. The second thing he could have done is he could have gone to U.S. district court and sought review of the denial of adjustment as long as there was no removal proceeding pending. Yes, that's what I have. I have never heard of that. I had not either until recently, Your Honor. But, yes, I can give you some cases on that if you're interested. But as long as there's no removal proceeding pending, at least during that time frame, he could have gone to U.S. district court and gotten review of the denial of adjustment application. Okay. Thank you very much. Thank you, Your Honor. We gave the government a little extra time with an extra question we'll give you, another 30 seconds if you've got something you really want to say. I believe there are some cases out of district court where when somebody has actually filed for review of the denial of adjustment status, they have indicated that where you have not exhausted the remedy of going through removal proceedings to have that application removed, they have no jurisdiction. I'm not sure about that, but I believe I've read that before. The other thing I want to add is that adjustment of status is a continuing application. So when the INS denied it, they basically interrupted that process. And the process is finished or finally adjudicated through the immigration court system. Don't you have a difficulty, though, about time? The question I asked you earlier. There's no doubt that there are certain steps he could have taken. But when we look at this record, we don't look to see what he could have done. We look to see what he did. And what he did was nothing. There was nothing that he could do. He couldn't compel the government to put him into removal proceedings. The only way you could compel the government would be to file an asylum application, but then he runs the risk of filing a frivolous application and then be denied all relief based on that. So he's kind of at the mercy of the government. And they never took action. And I agree with the government here that, you know, there's many cases out there. And he fell through the cracks. But there was nothing that he could do to get those removal proceedings initiated. But he knew what his status was. So he wasn't surprised about anything. He knew all the facts. He knew that his adjustment of status was denied and he had no status here. But he also knew that if he was ever caught, he could go see an immigration judge and renew that application. And today, if he would renew it, he would be eligible. At the time, soon after it was denied, if he tried to renew it, I would agree with the government that the judge would have denied it. But today, it's a different story. And this application is continuing until the BIA makes a final decision or the immigration judge makes a decision and nobody appeals it. Thank you very much. Thank you, Your Honor. All right. Case 10-71084 is submitted.
judges: Farris, Smith, Watford